# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TERRANCE PHILLIPS, | ) CASE NO. 3:18-cv-02556 |
| Petitioner, | ) JUDGE BENITA Y. PEARSON |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| TOM SCHWEITZER, Warden, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

Petitioner, Terrance Phillips, (hereinafter "Petitioner" or "Phillips"), challenges the constitutionality of his convictions in the cases of *State v. Phillips*, Wood County Court of Common Pleas Case Nos. 2015-CR-0349 and 2015-CR-0388. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden Tom Schweitzer ("Respondent")[1] filed an Answer/Return of Writ. (R. 9). Petitioner has filed a Traverse (R. 11), to which Respondent did not file a reply. Thereafter, Petitioner filed a motion to expand the record on December 10, 2019, which the court granted as unopposed. (R. 17 & 18). Respondent supplemented the record by filing transcripts of pretrial, trial, and sentencing proceedings on January 9, 2020. (R. 19). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

---

[1] Respondent indicates that Chae Harris is the Warden of Lebanon Correctional Institution where Petition is imprisoned. (R 9, PageID# 39).

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Sixth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Phillips's conviction as follows:

**Facts and Procedural History**

{¶ 4} The following evidence was offered at trial: Ohio State Highway Patrol Trooper Anthony J. Scherley was working the night shift on the evening of August 15, 2015, when he responded to a serious, vehicular accident on I–75 in Wood County. After the driver was transported by medical helicopter to a hospital in Toledo, Scherley followed in his cruiser and headed north, on I–75. The cruiser was clearly marked with reflective decals, identifying it as a police vehicle.

{¶ 5} Sometime after 10 p.m., Trooper Scherley came upon Phillips' blue Dodge Charger. Both were in the left lane, and Scherley, who was traveling about 85 miles per hour, changed lanes to go around Phillips. Scherley passed Phillips and continued on his way north.

{¶ 6} According to Scherley, Phillips then increased his speed to catch up with Scherley's cruiser. Scherley testified, "I heard a loud bang, all of my lights in my patrol car from my dashboard audio they all lit up and I had no more brakes." As Scherley tried to "figure out what was going on to my car, [Phillips'] Dodge Charger that was in the left lane just takes off, and is easily doing 100 miles an hour plus, takes off northbound."

{¶ 7} Trooper Scherley coasted his cruiser off of the highway, onto an exit ramp, that was closed for construction, until it came to a stop. He observed Phillips' Charger ahead of him, about 150 feet, also on the closed-exit ramp, which had crashed. Witnesses from a third vehicle stopped to offer assistance to Scherley and reported that two people had exited Phillips' Charger and had taken off running.

{¶ 8} While examining his cruiser to understand why the brakes had failed, Scherley saw a bullet hole in the left front quarter panel of the vehicle. He radioed dispatch to report a problem with his vehicle and to request a "BOLO" (be on the

2

lookout) for two people who should be considered armed and dangerous.

{¶ 9} The other person traveling in Phillips' car that night was Carl Spruiel. Spruiel, who lives in Detroit, testified that he had spent August 15, 2015, drinking in Columbus, Ohio with a girlfriend. When he was ready to return home, he called Phillips, who was traveling back home to Detroit, from West Virginia. Phillips offered to come get him. Spruiel denied that he accompanied Phillips to West Virginia.

{¶ 10} Spruiel described himself as very intoxicated and claimed that, while riding home, he "passed out" with head phones on, listening to music. Headphones were recovered from Phillips' vehicle, and the passenger side seat was in the full recline position.

{¶ 11} Spruiel testified that he was awakened when the Charger crashed and he hit his head on the front seat airbags that deployed. He denied that he heard the sounds of a weapon being discharged from inside the car. Spruiel also denied that he fled the scene with Phillips. Instead, he testified that he climbed out of an open window of the vehicle and looked around for Phillips. He said he "was trying to figure out what is going on, like, why is the car crashed? Why is [Phillips] missing?]."

{¶ 12} Within 15 minutes of the incident, Carl Spruiel was apprehended. At the time, he was walking along the shoulder of I–75. He was initially charged with several crimes, and his hands were tested for gunshot residue ("GSR"). Spruiel tested negative for GSR, and all charges against him were ultimately dropped. Spuiel [sic] testified freely at trial, not as part of any plea agreement.

{¶ 13} Efforts to capture Phillips included a manhunt by air and foot. Around 11:30 a.m. on August 16, 2015, Trooper Charles Grizzard received word that a Perrysburg Township resident had observed a person matching Phillips' description, who was riding a bicycle down a street. Grizzard drove to the location and observed Phillips on a bicycle, carrying a gas can and a bottle of water. Grizzard told Phillips to "stop." Phillips ignored the command and instead tossed the bottle of water at the squad car. With the help of two Perrysburg Township police officers, Grizzard forced Phillips off the road. At that point, Grizzard used a "taser" on Phillips, who immediately "seized up" and "dropped to the ground."

{¶ 14} When Phillips was taken into custody, a key fob was removed from his front shirt pocket which fit the abandoned Dodge Charger. Also, a photograph taken at the scene shows Phillips covered in bug bites and mud, as a result of having spent much of the night in a muddy soy bean field near the highway.

{¶ 15} Phillips confessed immediately, and several more times, over the next

couple of days. The first person Phillips confessed to was Ohio State Highway Patrol Lieutenant R.J. Ashenfelter, who was at the scene after Phillips was apprehended. Ashenfelter testified,

> I walked over to the suspect at this point and briefly checked on him and asked him if he was okay. * * * [A]ll I did was ask him if he was okay. [I said,] "What we are going to do is take you to the hospital, just cooperate," and he said, "I didn't meant to shoot the trooper. I didn't mean to shoot him." He goes, "I didn't know it was a trooper. There were black cars or trucks coming all of the way from West Virginia chasing me, I didn't know it was a trooper. I didn't mean to shoot a trooper."

{¶ 16} Later, at the hospital, Phillips repeated his confession to Ashenfelter. Ashenfelter described the scene:

> I walked in, he immediately started saying to me, "I didn't mean to shoot at the Trooper. I said, "Look, now is not the time. I am not asking you any questions. You are going to have your time to tell your story later." He said, "I didn't mean to shoot at the trooper." He starts talking to me again about the black trucks and people following him from West Virginia, "I didn't mean to shoot at the trooper." And at this point I told him, Stop. I'm going to read you your rights." And I said, "Because you are just telling me too much and I don't need to know anymore. I am not asking you questions, but I am going to ask you for consent to the GSR kit." * * * As I am reading them to him, he is reciting them with me like he knows them better than I do. So I said, "Do you understand?" He goes, "Yes." I said, "Okay. Stop talking to me. I'm asking you now, will you give consent for me to take the GSR kit?" He goes, "You will only need my right hand, that's the one I shot with." Then I said, "Okay." I did both hands.

{¶ 17} Phillips also told Ashenfelter that "my buddy in the car [Carl Spruiel] had nothing to do with this."

{¶ 18} Phillips tested negative for GSR on his hands.

{¶ 19} Trooper Elizabeth Petro also interviewed Phillips on the day of his arrest, after his release from the hospital. Phillips' interview was videotaped, and the tape was received as an exhibit at trial. During the interview, Phillips told the following story:

{¶ 20} An unnamed individual from West Virginia, who had given him drugs, was trying to kill him. Phillips told Petro that he had snorted "meth" and that he had not eaten or slept in four days. Phillips reported that he fired two shots from his vehicle, and he expressed remorse for doing so. Phillips never told Trooper Petro that Spruiel had fired the shots at the trooper's vehicle. He also never

4

expressed any fear of Spruiel or claimed that Spruiel threatened to harm him.

{¶ 21} Finally, Phillips confessed to a Sergeant Rod Smith with the Wood County Sheriff's Office, who interviewed Phillips while in custody. The taped interview was played for the jury. During the interview, Phillips claimed that he was being chased as he traveled from West Virginia by a "couple of trucks" and "that the truck was coming up behind him again so he [Phillips] pulled the gun out." Phillips also told Smith that he took the gas can which he said was outside, not inside, of a garage.

{¶ 22} A semiautomatic weapon was recovered from Phillips' vehicle, as were two "spent" shell casings. Kevin Belcik is a firearms expert with the Ohio Bureau of Criminal Investigations ("BCI"). Belcik examined the firearm, the two shell casings and the bullet recovered from Trooper Scherley's cruiser. Based upon his testing and analysis, he concluded that the bullet and shell casings were all fired from the handgun.

{¶ 23} Devonie Herdeman is an expert in DNA comparison with the BCI, and she analyzed the DNA collected from the trigger of the handgun. According to her, the sample taken from the trigger of the handgun matched Phillips' DNA profile.

{¶ 24} Five homeowners, who live along Mercer Road, in Wood County, all testified. The first testified that, on August 16, 2016, he discovered that a door to his "outbuilding" had been kicked in and damaged. The second witness said that his wife's bicycle was taken from their property, which he did not realize until it was returned by a sheriff, following Phillips' arrest. A third witness, a man, testified that, at around 3:00 or 4:00 a.m. on August 16, 2015, he was asleep in his home, when his dog, who was in his garage "started going nuts." The next day he found that his camper door was open and the framework on his horse barn door was cracked. Inside the barn, he found his newly washed ATV had mud on it. He testified that the clothes that Phillips was wearing when captured, belonged to him, including a long sleeve "Harley Davidson" shirt and a hat. His wife, the fourth witness, testified that she found a wad of clothes, not belonging to them, hidden in a towel in the camper. A fifth witness testified that she received a call at work on August 16, 2015, from her home alarm company that the alarm had been activated. She went home and found her back door ajar.

{¶ 25} At trial, Phillips' story diametrically changed from the one he reported at the time of his arrest. Phillips testified that it was Spruiel, not him, who shot at the trooper's vehicle. According to Phillips, he, Spruiel, and a woman, "C.F.", drove from Detroit to West Virginia on August 15, 2016. While there, Spruiel argued with another man about money. Phillips and Spruiel left, to return to Detroit, and saw trucks following them. Phillips admits that both he and Spruiel were paranoid, which he attributed to the drugs they had used. By the time they reached Wood County, Phillips said he felt more logical but Spruiel was still "antsy" and

5

"tripping." Spruiel insisted to Phillips that they were still being followed. Phillips assured him that they were not, until they heard "a boom." He explained,

> When you hear the boom, I hit the gas. I said, "I swear to [G]od you are right, they are shooting at us." We get a quarter mile up and you hear another boom. When you hear the boom, I go, "Uh-oh," and then that is when I lost control of the car, the car spinned, the airbag deployed in my face.

{¶ 26} Phillips does not know the source of the first "boom," but said the second one came from inside the car when Carl Spruiel fired a gun. After the car came to a stop, Spruiel pointed the gun at him and said, "Bitch, you better not tell on me. I swear to [G]od you better eat this. I will get your people. You run. * * *."

{¶ 27} Phillips admits to stealing a gas can that was left outside of a garage and a bicycle from another property. He further admits that he took some clothing, including a Harley Davidson shirt, shorts, and hat, but insists he found them outside, in a field. He denies that he ever went into a camper or anyone's home.

{¶ 28} By way of explanation, Phillips offered that he initially admitted to the shooting because he was afraid of Spruiel. He testified that Spruiel was known to be violent and that Spruiel had lied about how they knew each other. Phillips claims that they met while serving time together in prison, from 2009–2012. He also claims that Spruiel could not have been listening to music while in the car, as Spruiel testified, because he had left his phone in West Virginia. Also, given the angle at which the bullet landed, Phillips claims he could not have fired the gun, given where he was seated in the driver's seat.

*State v. Phillips*, 2017-Ohio-7107 at ¶¶ 3-28, 2017 WL 3382098 (Ohio Ct. App. Aug. 4, 2017).

## II.  Procedural History

**A.  Conviction**

On August 20, 2015, a Wood County, Ohio Grand Jury charged Phillips in Case No. 2015-CR-0349 with the following: one count of Felonious Assault in violation of Ohio Revised Code ("O.R.C.") § 2903.11(A)(2) and 2903.11(D)(1)(a) along with three firearm specifications, a forfeiture specification, and a Repeat Violent Offender specification; one count of Having Weapons While Under Disability in violation of O.R.C. § 2923.13(A)(2) & 2923.13(B) along with two firearm specifications and a forfeiture specification; and two counts of Carrying a

6

Concealed Weapon in violation of O.R.C. § 2923.12(A)(2) and 2923.12(F)(1), each accompanied by two firearm specifications and a forfeiture specification. (R. 9-1, PageID# 73-77, Exh. 1, Indictment, Case No. 2015CR0349). On August 28, 2015, Phillips, through court appointed counsel, entered a plea of "not guilty" to all charges. (R. 9-1, PageID# 80-81, Exh. 2).

On September 17, 2015, a Wood County, Ohio Grand Jury charged Phillips in Case No. 15-CR-0388 with the following: one count of Trespass in a Habitation in violation of O.R.C. § 2911.12(B) and 2911.12(E); three counts of Breaking and Entering in violation of O.R.C. § 2911.13(A) and 2911.13(C);[2] and one count of Breaking and Entering in violation of O.R.C. § 2911.13(B) and 2911.13(C)). (R. 9-1, PageID# 82-85, Exh. 3). On September 25, 2015, Phillips, through court appointed counsel, entered a plea of "not guilty" to all charges. (R. 9-1, PageID# 87-89, Exh. 4).

On September 24, 2015, Phillips, *pro se*, filed a motion requesting "rule 44 assignment of counsel," expressing conflicting interests with attorney Stephenson. (R. 9-1, PageID# 90, Exh. 5). On October 7, 2015, Phillips, *pro se*, filed motion for a change of venue. (R. 9-1, PageID# 91-92, Exh. 6). In the latter motion, Plaintiff expressed his dissatisfaction with his treatment in county jail, possible speedy trial rights concerns, and the composition of a potential jury for trial. *Id*. On the same date, defense counsel Stephenson moved to withdraw from representing Phillips asserting that he had been discharged by his client. (R. 9-1, PageID# 93-97, Exh. 7).

On October 9, 2015, the trial court held a hearing and granted defense counsel Stephenson's motion to withdraw, and appointed attorney Scott Coon to represent Phillips in both cases. (R. 9-1, PageID# 98-101, Exhs. 8 & 9). The court deferred ruling on the change of venue motion

---

[2] Prior to trial, the State dismissed the breaking and entering charge contained in Count 5. (R. 9-1, PageID# 117, Exh. 20).

7

finding it premature, continued the case until October 30, 2015, tolled the speedy trial time from October 9, 2015 to October 30, 2015, and confirmed the previously scheduled trial date of March 22, 2016. *Id*.

On December 9, 2015, Phillips, *pro se*, filed to motions seeking "Discharge for delay in trial" in both criminal cases. (R. 9-1, PageID# 101-102, Exhs. 10 & 11). On December 17, 2015, the trial court denied both motions, noting that "[a]ny delay occasioned by the Defendant's firing of his first appointed counsel and until a new jury trial with a new appointed attorney can be set within reason, is also charged against speedy trial." The court further observed that Phillips had been advised as such at the hearing held on October 9, 2015. (R. 9-1, PageID# 104-105, Exh. 12).

On January 6, 2016, Phillips, *pro se*, filed two motions: one requested the removal of his second court-appointed counsel; and the second sought dismissal on speedy trial grounds. (R. 9-1, PageID# 106-107, Exhs. 13 and 14). On January 7, 2016, the court denied both motions. (R. 9-1, PageID# 109-110, Exhs. 15 and 16).

On January 29, 2016, Phillips, *pro se*, filed a "Waiver of Counsel" in both criminal cases stating he "knowingly, intelligently and voluntarily waives rights to counsel." (R. 9-1, PageID# 112, Exh. 17). During a hearing held on February 19, 2016, after conferring with the court, Phillips withdrew his motion to represent himself. (R. 9-1, PageID# 113-116, Exhs. 18 & 19).

Jury trial commenced on March 22, 2016. (R. 9-1, PageID# 117-120, Exh. 20). On March 23, 2016, after the State presented its case, the defense moved for a judgment of acquittal pursuant to Ohio Crim.R. 29, which the court denied. *Id*. After the defense presented its case, Phillips renewed his motion for acquittal pursuant to Crim.R. 29, which the court overruled. *Id*. After deliberations, the jury found Phillips guilty of all remaining charges and specifications. *Id*.

In Case No. 2015-CR-0349, the court sentenced Phillips to a mandatory prison term of eleven years for the conviction of Felonious Assault on a Peace Officer, plus a cumulative total of nine years for the three firearm specifications, and a mandatory ten years for the Repeat Violent Offender specification in Count 1. (R, 9-1, PageID# 131-132, Exh. 21). In addition, Phillips was sentenced to thirty-six months in prison for the conviction of Having Weapons While Under Disability, plus a cumulative total of four years for the two firearm specifications associated with Count 2. *Id*. The court ordered all sentences to be served consecutively. (R. 9-1, PageID# 133, Exh. 21).

In Case No. 2015-CR-0388, the court sentenced Phillips to a period of incarceration of eighteen months for the conviction of Trespass in a Habitation for Count 1 and twelve months for each of the three convictions of Breaking and Entering contained in Counts 2, 3 and 4. *Id*. All sentences are to be served consecutively. *Id*. The court's sentencing resulted in an aggregate prison term of forty-one years and six months, of which thirty-four years were mandatory. (R. 9-1, PageID# 134, Exh. 21).

**B.     Direct Appeal**

On April 25, 2016, Phillips, *pro se*, filed one Notice of Appeal challenging both sets of convictions with the state appellate court. (R. 9-1, PageID# 139, Exh. 22). On May 20, 2016, Phillips, through new counsel, filed a Notice of Appeal for each criminal case. (R. 9-1, PageID# 140-196, Exhs. 23 & 24). On May 31, 2016, the state appellate court, *sua sponte*, consolidated the two appeals. (R. 9-1, PageID# 197, Exh. 25). Petitioner raised the following assignments of error:

  1.  Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Ohio Constitution.

9

> 2. The trial court committed error to the prejudice of Appellant by imposing the costs of prosecution without consideration of Appellant's present or future ability to pay.
>
> 3. The trial court erred to the prejudice of Appellant in denying his Rule 29 Motion.
>
> 4. The Jury's verdict was against the manifest weight of the evidence presented at trial.

(R. 9-1, PageID# 199- 221, Exh. 26).

On August 4, 2017, the state appellate court affirmed the judgment of the trial court, except that it vacated the trial court's order requiring Petitioner to pay the costs of his confinement and/or appointed counsel. (R. 9-1, PageID# 268-290, Exh. 28).

Petitioner, *pro se*, filed a notice of appeal with the Ohio Supreme Court on September 18, 2017. (R. 9-1, PageID# 291-297, Exh. 29). In his Memorandum in Support of Jurisdiction, Petitioner set forth the following four propositions of law:

> I. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, 10 of the Ohio Constitution.
>
> II. The trial court erred to the prejudice of Appellant in denying his Rule 29 Motion.

(R. 9-1, PageID# 298-301, Exh. 30).

The Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. Rule 7.08(B)(4), on January 31, 2018. (R. 9-1, PageID# 325, Exh. 31).

**C. Application to Reopen**

On October 2, 2017, Phillips, *pro se*, filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B). (R. 9-1, PageID# 326-331, Exh. 32). Phillips argued that appellate counsel was ineffective for failing to raise a speedy trial argument on direct appeal. *Id*.

On December 15, 2017, the state appellate court granted the application to reopen, and appointed counsel to represent Phillips. (R. 9-1, PageID# 341-345, Exh. 33).

On December 22, 2017, the State filed an Amended Application for Reconsideration under App. R. 26(A)(1) asserting that it had not been served with a copy of Phillips's application to reopen. (R. 9-1, PageID# 346-349, Exh. 34). Phillips, through counsel, opposed the motion and the State replied. (R. 9-1, PageID# 358-365, Exhs. 35 and 36).

On February 22, 2018, the state appellate court found the State's application for reconsideration well-taken and denied Phillips' application to reopen his appeal. (R. 9-1, PageID# 367-373, Exh. 37). The court ruled that "[w]e find that the triple-count provision of R.C. 2945.71(E) was not applicable to Phillips, based upon the existence of a parole holder from the state of Michigan.[3] Phillips was tried within the 270 day limit and, therefore, there was no speedy trial violation. It follows that Phillips original appellate counsel was not ineffective in failing to raise what we conclude is a meritless argument." *Id.* at 372.

On March 19, 2018, Phillips moved for reconsideration of the state appellate court's decision dated February 22, 2018. (R. 9-1, PageID# 374-378, Exh. 38). On May 25, 2018, the state appellate court denied Phillips' motion for reconsideration, holding that the motion was untimely filed. (R. 9-1, PageID# 392-395, Exh. 41). Alternatively, the court found that the claim was without merit. *Id.*

On June 22, 2018, Phillips, *pro s*e, filed a Notice of Appeal with the Ohio Supreme Court. (R. 9-1, PageID# 396-397, Exh. 42). In his memorandum in support of jurisdiction, he raised the

---

[3] The state appellate court noted that under Ohio law "a person charged with a felony shall be brought to trial within 270 days of the date of arrest. R.C.2945.71(C)(2)." (R. 9-1, PageID# 370, Exh. 37). According to the triple-count provision, "if a person is held in jail in lieu of bail, then each day of custody is to be counted as three days. R.C. 2945.71(E)." *Id.*

11

following sole proposition of law:

> I. An appellant's 6th Amendment Constitution Rights to speedy trial is violated when the trial court denies the appellant the Triple Count provision of R.C. 2945.71(E).

(R. 9-1, PageID# 398-406, Exh. 43).

On September 12, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4). (R. 9-1, PageID# 417, Exh. 44).

**D. Federal Habeas Petition**

Petitioner, *pro se*, filed the Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> **GROUND ONE**: The petitioners Constitutional rights to speedy trial was, violated when the trial court denied the petitioners speedy trial due to a notification from the State of Michigan. The exhibit being used by the State as a valid warrant has no merit or authorization in this State in accordance to Ohio law.
>
> *Supporting Facts*: … The State alleged to have a valid parole warrant from the State of Michigan, which the State did not produce during the discovery phase. The State has yet to produce a valid warrant in accordance with Ohio law. The State of Michigan filed a true detainer against Phillips May 5, 2017 with the Ohio Bureau of Record Management 18 months after Phillips was convicted on case no 2015-CR0349. Thus showing there was not an Active warrant lodged with the State of Ohio at the time of Phillips arrest on case no 2015CR0349. Therefore Phillips was Constitutionally entitled to Speedy trial.

(R. 1, PageID# 6).

### III. Exhaustion and Procedural Default

Respondent asserts that to the extent Petitioner is attempting to raise a federal constitutional speedy trial claim in his sole ground for relief, such a claim is procedurally defaulted. (R. 9, PageID# 60). Respondent contends Petitioner "could and should have raised it on direct appeal," that he did not, and, therefore, the claim has "never been fairly presented to the

Ohio courts and is now barred by Ohio's doctrine of res judicata…." *Id*. Petitioner attempted to raise an ineffective assistance of counsel claim in his application to reopen based on counsel's failure to raise a speedy trial argument.[4] (R. 9-1, PageID# 327-331, Exh. 32).

The Court declines to address Respondent's procedural default argument regarding whether Petitioner fairly presented and exhausted a federal speedy trial claim in the state courts. Rather, the Court will address ground one on the merits below to the extent it raises a cognizable claim. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law); *accord Pritchett v. Berghuis*, 2016 U.S. Dist. LEXIS 165947 at n. 2 (W.D. Mich. Nov. 5, 2016) (observing that both the Supreme Court and the Sixth Circuit have indicated that a district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim in order to promote expediency); *see also Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Swanigan v. Sherry*, 502 Fed. App'x 544, 54 6 (6th Cir. 2012).

---

[4] Although Phillips mentioned the federal constitutional right to a speedy trial in his application to reopen, his argument is firmly rooted in a perceived violation of Ohio's speedy trial statute. (R. 9-1, PageID# 327-331, Exh. 32).

## IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

14

unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One:**

In his sole ground for relief, Petitioner appears to argue that his speedy trial rights were violated under federal Constitution when the State of Ohio allegedly failed to follow the provision of its statutory speedy trial laws. (R. 11, PageID# 507-516). Respondent contends that "[i]t is clear from Phillips' argument based on the triple-count provision that his speedy trial claim is based on Ohio's speedy trial statute and not on the federal constitution.[5] Therefore, it is noncognizable in federal habeas." (R. 9, PageID# 58).

Respondent correctly asserts that a claimed violation of Ohio's speedy trial statute is not necessarily a violation of the federal constitutional right to a speedy trial, nor does an alleged violation of Ohio's speedy trial statute present a cognizable federal habeas claim. (R. 9, PageID# 58-59). "It is especially inappropriate for a federal habeas court to set aside a state court's ruling on an issue of state law where, as in the present situation, Ohio's appellate courts on direct

---

[5] As explained in footnote 3, the Ohio triple-count provision applies "if a person is held in jail in lieu of bail, then each day of custody is to be counted as three days. R.C. 2945.71(E)." (R. 9-1, PageID# 370, Exh. 37).

15

appeal have already found appellant's claim of a violation of his statutory right to a speedy trial to be meritless." *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998).

The Sixth Circuit has observed that:

We note first that the Ohio courts have determined that petitioner's rights under the Ohio speedy trial statute have not been violated. It is axiomatic that state courts are the final authority on state law. The Ohio courts concluded that the delay in this case was the result of a necessary and reasonable continuance granted on the trial court's own motion, a ground that is construed to toll the period of pretrial delay under OHIO REV.CODE ANN. § 2945.72(H). Although petitioner argues, in effect, that this interpretation is erroneous, a federal court may not set aside the state court's interpretation of state statutes.

*Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984).

District courts within the Sixth Circuit have also consistently found claims based solely on a violation of Ohio's speedy trial statute fail to present cognizable claims for federal habeas relief. In *Herron v. Kelly*, the district court found that the petitioner had "raised only state statutory speedy trial rights in this Court," and held that "[b]ecause petitioner's second ground for relief is premised on his interpretation of his state statutory rights, it fails to raise a cognizable claim for federal habeas relief." 2013 WL 3245326 at *4-5, 2013 U.S. Dist. LEXIS 89754 at *14-15 (N.D. Ohio June 26, 2013) (Lioi, J) (citing *Norris*, 146 F.3d 314; *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475 (1991)); *accord Anderson v. Warden, Lebanon Corr. Inst.*, No. 1:18-CV-149, 2019 WL 2504355, at *6 (S.D. Ohio Apr. 30, 2019) ("[B]ecause the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy trial statute or state case-law interpreting the Ohio statute."), *report and recommendation adopted*, 2019 WL 2502796 (S.D. Ohio June 17, 2019); *Green v. Andrews*, No. 1:07CV2093, 2008 U.S. Dist. LEXIS 113557 at *18-19 (N.D. Ohio May 30, 2008) (White, M.J.)

(finding that a petitioner's argument based solely on a violation of Ohio's speedy trial statute did not present a cognizable habeas claim), adopted by, 2010 U.S. Dist. LEXIS 47694 (N.D. Ohio, May 14, 2010) (O'Malley, J.).

Petitioner's arguments revolving around the issue of whether he was tried within the statutorily required 270 days or whether he should have been tried within ninety (90) days due to the triple counting provisions of Ohio's speedy trial statute invoke solely issues of state law. The state courts have already been decided these issues, finding no violation of the Ohio speedy trial provisions. Following the above cited authority, the court foregoes analysis of whether the Ohio courts correctly followed Ohio law, as such claim is not cognizable on federal habeas review.

However, giving Petitioner a generous benefit of the doubt, the court will construe the Petition as though it sufficiently raised a *federal* speedy trial claim. The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ...." U.S. Const. Amend VI. The Supreme Court has recognized the federal constitutional right to a speedy trial permits some delays, which, depending on the circumstances of each case, cannot "be quantified into a specified number of days or months." *Barker v. Wingo*, 407 U.S. 514, 521-23, 92 S. Ct. 2182 (1972). The *Barker* decision established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id*. at 530. The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.

"The first [factor] … is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay …." *Doggett v. United States*, 505 U.S. 647, 651-52, 112 S. Ct. 2686 (1992) (internal quotation marks omitted); *accord United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) ("The first factor is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases."); *United States v. Smith*, 94 F.3d 204, 208-209 (6th Cir. 1996) ("the 'length of the delay is to some extent a triggering mechanism,' and unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, 'there is no necessity for inquiry into the other factors that go into the balance.'"). "A delay that approaches one year is 'presumptively prejudicial,' and triggers the speedy trial analysis." *United States v. Flowers*, 476 Fed. App'x 55, 60 (6th Cir. 2012) (citing *Doggett*, 505 U.S. at 652).

Phillips was arrested on August 25, 2015. *State v. Phillips*, 2017-Ohio-9063 at ¶12, 2017 Ohio App. LEXIS 5510 (Ohio Ct. App., Dec. 15, 2017). His trial for both cases commenced on March 22, 2016. (R. 9-1, Exh. 28). The state appellate court observed that "it does not appear that Phillips ever posted bond and that he spent the entire time, between his first arrest and the trial, in jail." *Phillips*, 2017-Ohio-9063 at ¶12. Therefore, the time between his arrest and his trial was 210 days or six months and twenty-six days. The Sixth Circuit Court of Appeals has explained that "[d]elays several months short of one year are not uncommonly long ..." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). In fact, the *Gardner* court ceased its examination of the speedy trial issue where the delay was 265 days (or nearly nine months). *Id*.; *see also Perry v. Warden of Mansfield Corr. Inst.*, No. 5:13-cv-01196, 2014 U.S. Dist. LEXIS 183744, at *56 (N.D. Ohio Aug. 4, 2014) (White, M.J.) (finding that a 278 day delay between

18

the date of the habeas petitioner's arrest and trial was not presumptively prejudicial); *United States v. Cummings*, 2012 U.S. Dist. LEXIS 137467, 2012 WL 4442738, at *4 (S.D. Ohio Sept. 25, 2012) (holding seven months and eight days was not presumptively prejudicial). Other circuit courts have found delays of approximately seven months insufficient to trigger a full speedy trial analysis under *Barker*. *See, e.g., United States v. Lugo*, 170 F.3d 996, 1002 (10th Cir. 1999) ("[T]he delay of approximately seven months, even if not excusable, is not 'presumptively prejudicial' and, therefore, a *Barker* analysis is not necessary."); *United States v McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) (lapse of "a little over seven months" was "too brief to trigger review of Sixth Amendment speedy trial claim"); *United States v. MacDonald*, 635 F.2d 1115, 1117 (4th Cir. 1980) (delay of "at most seven months" found to be "entirely too short to 'trigger' further inquiry under *Barker*").

Therefore, the delay herein was not presumptively prejudicial, and no further inquiry is necessary. Under such circumstances, even to the extent that the court liberally construes Petitioner's speedy trial claim as raising a federal claim, the state appellate court's resolution of the underlying claim cannot be said to run afoul of clearly established federal law. Petitioner's sole cognizable ground for relief is, therefore, without merit.

## V. Conclusion

For the foregoing reasons, it is recommended that Phillips's Petition be DENIED.

s/ David A. Ruiz
United States Magistrate Judge

Date: November 10, 2020

19

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. *28 U.S.C. § 636(b)(1)*. Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).